IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

```
ELI OBED ESPARZA,                )
                                 )
                Plaintiff,       )    CIVIL ACTION
                                 )
v.                               )    No.  06-1309-MLB
                                 )
DAVID THILL, et al.,             )
                                 )
                Defendant.       )
_____ )
```

**MEMORANDUM AND ORDER**

This case comes before the court on defendants' motions for summary judgment. (Docs. 123, 125, 129). The motions are fully briefed and ripe for decision. (Docs. 124, 126, 130, 141, 154, 158, 160).

**I.    Facts**

William Farris, a resident of Great Bend, Kansas, entered into various loan agreements with Sunflower Bank (hereinafter the "Bank"). Those agreements granted the Bank a security interest in farming equipment and supplies owned by Farris. Farris stored various equipment at 612 Williams in Great Bend (hereinafter the "lot"), a vacant lot he owned jointly with Madeline Farris. Farris allowed Esparaza to store various items at the lot, including a forklift, trailer, tow bars and tools.

On January 3, 2003, the Bank petitioned for foreclosure of its security interest in Farris' property. Subsequent to that petition, Farris filed for bankruptcy. On July 5, 2005, the United States Bankruptcy Court for the District of South Dakota lifted the automatic stay and allowed the Bank to enforce its rights against the

collateral.  The order stated that the Bank could pursue its interest in Farris' "[e]quipment, which includes, all farm machinery and equipment used in farming, feeding or ranching operations, including custom harvesting, all additions, accessions, proceeds, increases, insurance benefits and . . . including [specific property set out by item]." (Doc. 154, exh. 5).  The Bank then sought and was granted an order for replevin from the District Court of Barton County, Kansas. (Doc. 124, exh. R).  The order for replevin sets forth a specific list of property that the Bank was entitled to repossess.[1]  The list does

_____

   [1] The order states in pertinent part: "You are therefore commanded to take immediate possession of the property described on Exhibit "A" and by reference incorporated herein, located at 1807 Stone, Great Bend, Barton County, Kansas, or such other places known to the defendant, and deliver it to said Plaintiff by contacting Sunflower Bank." (Doc. 154, exh. 2).  Exhibit A contains the following list of items that were subject to the order:
   1.  JD 925 Header (Flex Head)
   2.  Two (2) Massey-Ferguson 924 Headers
   3.  1995 Freightliner
   4.  1995 Freightliner
   5.  One (1) John Deere eight (8) row corn header
   6.  Two (2) John Deere six (6) row corn headers
   7.  1992 Case IH 7130 Tractor
   8.  1967 Case 930/Tractor
   9.  New Holland 2550 Swather
   10. 1991 Case IH 1660 Combine
   11. 1992 Case IH 1660 Combine
   12. (3) Flatbed combine trailers
   13. (2) 14' Grain Pup trailers
   14. Gravity box (grain trailer)
   15. John Deere 535 Round Baler
   16. Value in excess of $10,000 PMSI of Farmer's Bank in John Deere 567 Round Baler
   17. Orange DitchWitch 2 axle trailer
   18. Flatbed Trailer (for hauling 7130 Tractor)
   19. 1988 Honda ZB50
   20. 2 Flatbed Trailers
   21. 1957 Trailer (Ford bus body)
   22. 1983 Donahue header trailer
   23. Timpte hopper-bottom trailer
   24. Bale mover
   25. 16 wheel rack
   26. 1983 AGCO 8070

not include a dishwasher, forklift or tools, items owned by plaintiff.
(Doc. 154, exh. 2).

David Thill, president of the Bank and a member of the City
Council of Great Bend, contacted various individuals to assist with
the repossession of Farris' property.  After determining that both
Carr Auctions and a local salvage company would not be willing or
interested in all of the property at the lot, Thill contacted
individuals employed by the City of Great Bend (hereinafter the
"City").  Thill was aware that the City was contemplating an abatement
on the lot.  Thill spoke with Michael Brown, the City Sanitarian, to
inform him that the Bank had an interest in the property and that it
was initiating a foreclosure.  Brown stopped pursuing the abatement
on the lot at that time.[2]

Thill contacted Robert Suelter, the City Attorney, and Nick
Gregory, the Assistant City Administrator, to discuss an arrangement
in which the City would provide a crew to remove the property at the
lot.  Thill proposed that the Bank and the City would then equally
share the profits from the sale of the property at the scrap yard.
Brown agreed to assist the Bank, although the parties did not enter
into a formal written agreement.  The city council was not informed
of the agreement.  Prior to the removal of property, Brown was
instructed by his supervisor, Don Craig, that City employees would be
performing a cleanup of the lot as a subcontractor for the Bank.  Brown

        27. While 4WD Tractor
        28. Folding disc
(Doc. 154, exh. 2 at "EXHIBIT A").

        [2] Brown did initiate abatement procedures for the two vehicles
that remained on the lot after the other property was removed.

then relayed this information to his assistant, Tom Holmes.  Brown
testified that in his nineteen years of employment the City had never
acted as a subcontractor for a private company to complete a cleanup.

At approximately 8:30 a.m. on August 18, 2005, City employees
Tom Holmes, Frances Simmons, Danny Reynolds, Dave Keeler and Keith
Fritz arrived at the lot to begin removal of the property.  Keeler and
Simmons both believed that they were performing an abatement on the
lot.  Simmons was instructed by Mike Crawford, street supervisor, to
perform an abatement.  Brown previously instructed Holmes to remove
all items with the exception of two vehicles.  Thill arrived at the
lot and confirmed Brown's instructions.  The lot contained several
items, including trailers, a Winnebago and various smaller items.  The
City employees took photographs of the items on the property but those
photographs have since been misplaced.  After approximately 95% of the
items on the lot had been removed, Farris arrived at the lot.[3]  The
contents of the conversation between Farris and Brown are
controverted[4], but it is uncontroverted that plaintiff's property was
not specifically identified.

The equipment used to remove the property belonged to the City.
All metal items were taken to Acme Scrap, Inc. for salvage.  The City
and the Bank each received $974.36 from Acme.  The City employees then

---

[3] Plaintiff's trailer was removed, during the cleanup, by unknown
individuals while the City employees were at lunch.  The City
employees, however, did not make a missing property report about the
trailer.

[4] Plaintiff asserts that Farris informed Brown that property
belonging to others was stored on his lot.  Farris testified that he
was "pretty sure" that he told Brown that property belonging to other
individuals was stored at the lot.  (Doc. 130, exh. D at 69).

-4-

took the non-metal items to the Barton County Landfill.  The fees for dumping those items were paid by the City.

Plaintiff asserts that his property was removed in violation of his civil rights and has stated claims against the City, the Bank, David Thill, Michael Brown, Tom Holmes and Don Craig.  Plaintiff has also asserted state tort claims against all defendants.  Defendants have moved for summary judgment on all claims.[5]  The Bank has also moved for summary judgment on the City's cross claim.

## II.   Summary Judgment Standards

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here.  Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim."  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).  When confronted with a fully briefed motion for summary judgment, the court must ultimately

---

[5] In its reply, the City states that summary judgment is also sought on behalf of Don Craig.  (Doc. 160).  The motion for summary judgment, however, was filed prior to plaintiff's second amended complaint which added Don Craig.  (Doc. 129).  The motion for summary judgment and plaintiff's response do not include any facts pertaining to Don Craig.  Therefore, the court will not address plaintiff's claims against Craig in this order.  Craig must file a separate motion for summary judgment and allow plaintiff adequate opportunity to address his claims against Craig.

determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

## III. Analysis

All defendants have moved for summary judgment. One motion was filed on behalf of the City defendants and a separate motion was filed on behalf of the Bank defendants. Brown and Holmes, as individual city defendants, have also asserted that they are entitled to qualified immunity.

### A. Qualified Immunity

Plaintiff seeks monetary damages pursuant to 42 U.S.C. § 1983. That statute renders liable any person who "under color of [law] . . . subjects, or causes to be subjected, . . . any [person] . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Section 1983 was enacted to provide protections to those persons wronged by the misuse of power. While the statute itself creates no substantive civil rights, it does provide an avenue through which civil rights can be redeemed. See Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995) ("Section 1983 creates no substantive civil rights, only a procedural mechanism for enforcing them."). Government officials performing discretionary duties are afforded qualified immunity shielding them from civil damage liability. See Anderson v. Creighton, 483 U.S. 635, 638

-6-

(1987).  Qualified immunity protects these officials unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.  See Wilson v. Layne, 526 U.S. 603, 609 (1999); Baptiste v. J.C. Penney Co., Inc., 147 F.3d 1252, 1255 (10th Cir. 1998).  The defense not only provides immunity from monetary liability, but perhaps more importantly, from suit as well.  See Horstkoetter v. Dept. of Public Safety, 159 F.3d 1265, 1277 (10th Cir. 1998).

"The framework for analyzing claims of qualified immunity on summary judgment is well settled." Baptiste, 147 F.3d at 1255.  When a defendant has pled qualified immunity, the plaintiff bears the burden of (1) coming forward with sufficient facts to show that the defendant's actions violated a federal constitutional or statutory right and (2) demonstrating the right allegedly violated was "clearly established" at the time the conduct occurred.  See Horstkoetter, 159 F.3d at 1277-78; Baptiste, 147 F.3d at 1255.  As noted in County of Sacramento v. Lewis, 523 U.S. 833 (1998), the first step is "to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all." Lewis, 523 U.S. at 841 n.5; Romero v. Fay, 45 F.3d 1472, 1475 (10th Cir. 1995).  "Only after determining that [the plaintiff] has alleged a deprivation of a constitutional right, does this court ask whether the right allegedly violated was clearly established at the time of the conduct at issue." Baptiste, 147 F.3d at 1255 n.6.

To determine whether a plaintiff has sufficiently asserted the violation of a constitutional right, this court must decide whether the plaintiff's allegations, if true, state a claim for a violation

-7-

of a constitutional right.  See Romero, 45 F.3d at 1475 (relying in part upon Siegert v. Gilley, 500 U.S. 226, 231-32 (1991)). Determining whether a plaintiff has stated a claim for a constitutional violation is purely a legal question.  See id.  Despite the inevitable factual issues that become intertwined in the characterization of a plaintiff's precise constitutional claims, this court can not avoid the legal issue by simply framing it as a factual question.  See Archer v. Sanchez, 933 F.2d 1526, 1530 & n.7 (10th Cir. 1991).

Plaintiff has asserted that defendants violated his Fourth Amendment right to be free from unreasonable seizures.  Defendants admittedly removed plaintiff's property from the lot without his approval.  Defendants argue that their actions did not violate plaintiff's rights because plaintiff did not have a reasonable expectation of privacy at the lot.  A reasonable expectation of privacy, however, is not required.  See Soldal v. Cook County, Ill., 506 U.S. 56, 62-63, 113 S. Ct. 538, 544 (1992); Winters v. Bd. of County Com'rs, 4 F.3d 848, 853 (10th Cir. 1993).  In describing the protections of the Fourth Amendment, the Supreme Court stated, "[a] 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed.  A 'seizure' of property occurs where there is some meaningful interference with an individual's possessory interests in that property."  Soldal, 506 U.S. at 63.  Defendants cite Oliver v. United States, 466 U.S. 170, 104 S. Ct. 1735 (1984), for the proposition that a reasonable expectation of privacy is required for a violation of the Fourth Amendment.  The Fourth Amendment violation in Oliver, however, was based on a

-8-

warrantless search of a property.  The court stated clearly in <u>Soldal</u> that its prior cases do not support a conclusion "that the Fourth Amendment protects against unreasonable seizures of property only where privacy or liberty is also implicated." <u>Soldal</u>, 506 U.S. at 65. Accordingly, when a citizen is asserting that a Fourth Amendment violation occurred because of a seizure of his property, the court only needs to address whether the individual retained a possessory interest in that property. <u>Id.</u> at 63.

Plaintiff is not claiming that his rights were violated by a search, but rather the seizure of his own property.  There is no dispute that all of the items contained on the lot were seized, including items owned by plaintiff.  Therefore, defendants interfered with his possessory interests in his property.

Next, the court must determine if defendants' interference with plaintiff's possessory interests in the property was reasonable.  Only an interference that is unreasonable implicates the Fourth Amendment. The controlling inquiry is "whether it would be clear to a reasonable officer [in the defendant's position] that his conduct was unlawful in the situation he confronted." <u>Simkins v. Bruce</u>, 406 F.3d 1239, 1241 (10th Cir. 2005) (quoting <u>Saucier</u>, 533 U.S. at 202).  Both individual defendants Brown and Holmes were informed by their supervisors and Thill that the Bank had a right to repossess all of the items owned by Farris, i.e. the items that were stored on the lot. Plaintiff argues that defendants' conduct was unreasonable because the City could not permit its employees to act as a private contractor for the bank and assist it in a repossession without the approval of the City Council.  (Doc. 154 at 31-32).  However, the facts show that

-9-

Brown and Holmes were told by their supervisors to act in this situation.  Brown and Holmes were not aware that their actions were unlawful.  In fact, the city attorney did not object to their actions and approved the City's involvement after being told that the Bank had been given an order of replevin and that Thill would be present to inform the City employees which items belonged to the Bank.  (Doc. 154, exh. 6 at 22).  Even when Farris arrived at the lot he did not inform Brown that the Bank did not have an interest in plaintiff's property.  Plaintiff asserts that Farris may have told Brown that items on the lot did not belong to him but whatever was said is pretty meaningless because Farris did not arrive at the lot until 95 to 99 percent of the items on the lot had been removed.  (Doc. 154, exh. 4 at 59).  Brown then allegedly stated that he was only doing what Suelter, the city attorney, had told him to do.  Moreover, and most importantly, Thill, a member of the City Council is the person who orchestrated the entire project.  Given these facts, the court finds that city employees at Brown and Holmes' level would not view their conduct as unlawful.  See Pepper v. Village of Oak Park, 430 F.3d 805, 811 (7th Cir. 2005)(the officer was at all times under the impression that the activity was lawful).

Even if the court should find that the conduct was unreasonable, the Tenth Circuit requires the contours of the right at issue to be sufficiently clear that a reasonable official would have understood that what he was doing violated a right that was clearly established at the time the alleged acts took place.  See Cruz v. City of Laramie, 239 F.3d 1183, 1187 (10th Cir. 2001); Watson v. University of Utah Med. Ctr., 75 F.3d 569, 577 (10th Cir. 1996).  This standard, however,

must be used in a particularized manner[6] because "[o]n a very general level, all constitutional rights are clearly established." Horstkoetter, 159 F.3d at 1278.  Were this level of particularity not required, Harlowe "would be transformed from a guarantee of immunity into a rule of pleading," that would "destroy 'the balance that [Supreme Court] cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties.'" Anderson, 483 U.S. at 639-40 (quoting Davis v. Scherer, 468 U.S. 183, 195 (1984)).

Plaintiff cites Marcus v. McCollum, 394 F.3d 813 (10th Cir. 2004), for the proposition that the law was clearly established that police officers cannot assist in a private repossession.  Marcus, however, involved a private self-help repossession where the creditor was not acting pursuant to a court order.  In this case, Brown and Holmes had been told by Thill, a member of the City Council, that the Bank had been issued an order to repossess all of Farris' property. They were then informed that they were to remove the property.  Brown and Holmes were operating on the reasonable but mistaken belief that all the property was to be seized under a court order.  Plaintiff has failed to establish that a reasonable employee would have understood that what he was doing violated a right that was clearly established at the time the alleged acts took place.  Brown and Holmes are

---

[6]  The Tenth Circuit "has held that for a right to be 'particularized,' there must ordinarily be a Supreme Court or Tenth Circuit decision on point, or 'clearly established weight of authority' from other courts." Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995); see also Cruz v. City of Laramie, 239 F.3d 1183, 1187 (10th Cir. 2001); Horstkoetter v. Department of Public Safety, 159 F.3d 1265, 1278 (10th Cir. 1998).

entitled to qualified immunity.

**B.   City Liability**

As to the claims against Brown and Holmes, the City has no liability because the court has just found that their actions did not violate plaintiff's Fourth Amendment rights.  However, plaintiff has alleged a section 1983 claim against Craig, Brown's supervisor, and Craig has yet to file a motion for summary judgment.  The court cannot determine at this stage whether the City has any liability for Craig's alleged actions based on the facts before it.  Accordingly, the City's motion for summary judgment on plaintiff's section 1983 claim for alleged violations of his Fourth Amendment rights is granted in part and denied in part, for the time being.

**C.   Thill and the Bank (the Bank Defendants) 1983 Liability**

To state a claim for relief in a section 1983 action, plaintiff must establish that he was (1) deprived of a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed under color of state law.  See American Mfr's. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).  First, plaintiff asserts that his Fourth Amendment right to be free from unreasonable seizure of his property has been violated by the Bank defendants.  The court already determined that plaintiff's property was seized.  Most importantly, the Bank defendants initiated the City employees' actions in removing plaintiff's property.  Those actions do not implicate the Fourth Amendment, however, unless they were unreasonable.  The Bank defendants assert their actions were reasonable because they had been issued an order for replevin and had a right to remove Farris' property from his lot.  The Bank defendants

-12-

argue that the accidental removal of plaintiff's property does not amount to a constitutional violation.   A seizure of property is reasonable if it is done in accordance with a proper abatement procedure or if a party has obtained a warrant to seize condemned items.   Santana v. City of Tulsa, 359 F.3d 1241, 1245 (10th Cir. 2004).

It is undisputed that the proper procedures to obtain authorization for an abatement were not followed.   The only authority the Bank defendants received was an order of replevin for specifically identified property which did not include a forklift, tools or a dishwasher - items belonging to plaintiff that were removed by defendants.   Because Thill made no attempt to determine whether there was property which did not belong to Farris, Thill instructed the City employees to remove items that were not contained in the order from the court.[7]   Based on the facts before the court, the Bank defendants' conduct cannot be deemed reasonable.

Next, plaintiff is required to establish that the removal of his property was committed under color of state law.   See Sullivan, 526 U.S. at 49-50.   To satisfy the state action requirement, "the party charged with the deprivation must be a person who may fairly be said to be a state actor . . . because he is a state official, because he

---

[7] The Bank defendants seemingly argue that the order lifting the stay from the bankruptcy court authorized them to recover all of Farris' property.   While that order does state a general catch-all phrase authorizing them to pursue Farris' property, that order did not grant them the immediate right to possession.   The Bank defendants did not have a right to possession until they were issued an order of replevin from the district court.   That order did not give the Bank a right to repossess all of Farris's property - the Bank was only authorized to take the items set forth in the order.

has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed.2d 482 (1982). The City and its employees are not considered state actors during a repossession of property unless they cross the line and act to aid the repossessor. Marcus v. McCollum, 394 F.3d 813, 819 (10th Cir. 2004).

The Bank defendants argue that the City employees were simply independent contractors for the day who did not act under color of state law. However, the evidence does not support that conclusion. The Bank did not pay the employees that day, the City did. The Bank also did not pay for the use of the equipment. Most importantly, the amount of money the City expended on employee time was more than it received from its take in the money paid by the scrap yard. On that day, the City employees were operating City vehicles and working during their normal work week. "[T]he overarching lesson of the case law is that [government officials] may act to diffuse a volatile situation, but may not aid the repossessor in such a way that the repossession would not have occurred but for their assistance." Id.; see also Price-Cornelison v. Brooks, 524 F.3d 1103, 1116 (10th Cir. 2008). In this case, plaintiff's property would not have been removed but for the actions of the City and its employees. Clearly, the Bank defendants had neither the means nor the inclination to remove the property without assistance of the city employees and, undoubtedly because of Thill's position, the City agreed to the arrangement. Therefore, the City defendants' actions were committed under color of state law.

-14-

In order for the Bank defendants to be liable under section 1983, plaintiff is required to show that they were essentially state actors too. The Tenth Circuit has set forth the following four tests to determine whether a private party should be deemed a state actor: "(1) the public function test, (2) the nexus test, (3) the symbiotic relationship test and (4) the joint action test." <u>Johnson v. Rodriques</u>, 293 F.3d 1196, 1202 (10th Cir. 2002). In this case, plaintiff only asserts that the joint action test applies.

> Under the joint action test, "state action is also present if a private party is a willful participant in joint action with the State or its agents. When applying this analysis, courts generally examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights. Most decisions discussing this concept hold that if there is a substantial degree of cooperative action between state and private officials, or if there is overt and significant state participation in carrying out the deprivation of the plaintiff's constitutional rights, state action is present.

<u>Id.</u> at 1205.

Clearly, there was a substantial degree of cooperative action between the City and the Bank defendants. As discussed earlier, the City employees were involved in every step of the process. The repossession would not have occurred but for the City's involvement that day. Therefore, the court finds that plaintiff has established that the Bank defendants can be charged as state actors and liable under section 1983 for a Fourth Amendment violation.

### D. Fourteenth Amendment

Next, plaintiff has asserted claims against all defendants for alleged violations of his Fourteenth Amendment right to receive due process. All defendants argue that plaintiff's Fourteenth Amendment

claim is subsumed within the Fifth Amendment's taking clause and cites Miller v. Campbell County, 945 F.2d 348 (10th Cir. 1991), to support their argument. In Miller, the Tenth Circuit held that the plaintiff's due process claim was subsumed into his claim for just compensation under the Fifth Amendment based on the United States Supreme Court's decision in Graham v. Connor, 490 U.S. 386, 109 S. Ct. 1865 (1989). In Graham, the court rejected the plaintiff's Fourteenth Amendment claim: "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." 490 U.S. at 395, 109 S. Ct. at 1871. Importantly, the Supreme Court in Graham was reviewing a claim for substantive due process and not procedural due process. Moreover, in Soldal v. Cook County, Ill., 506 U.S. 56, 113 S. Ct. 538 (1992), the Supreme Court clarified its decision in Graham and held that Graham does not mandate that a court identify "the claim's 'dominant' character. Rather, [the court must] examine each constitutional provision in turn." Id. at 70. Based on the reasoning in Soldal, the court will examine both claims asserted by plaintiff.

Defendants argue that plaintiff's Fourteenth Amendment claim must fail because the City employees' actions were random and unauthorized. A plaintiff cannot raise a § 1983 procedural due process claim where the alleged loss of property resulted from the random and unauthorized actions of a state actor, which made the provision of pre-deprivation process impossible or impracticable, and an adequate state post-deprivation remedy exists. Parratt v. Taylor, 451 U.S. 527, 540-41

(1981) overruled on other grounds by Daniels v. Williams, 474 U.S. 327
(1986).  Even intentional deprivations of property do not constitute
a Fourteenth Amendment violation if adequate state post-deprivation
remedies are available.  Hudson v. Palmer, 468 U.S. 517, 533-36
(1984); see also Smith v. Colo. Dep't of Corr., 23 F.3d 339, 340 (10th
Cir. 1994) ("Fourteenth Amendment due process guarantees pertaining
to property are satisfied when an adequate, state postdeprivation
remedy exists for deprivations occasioned by state employees.").

Conversely, when the deprivation is caused by established state
procedures, the existence of an adequate remedy under state law does
not extinguish a procedural due process claim.  See Logan v. Zimmerman
Brush Co., 455 U.S. 422, 435-37 (1982); Zinermon v. Burch, 494 U.S.
113, 136-39 (1990).  In Logan, the Supreme Court held that the
plaintiff suffered a procedural due process violation because
established state procedures erroneously deprived him of his property
interest in bringing a cause of action.  Logan, 455 U.S. at 437.  The
Court distinguished the case from Parratt, noting that the plaintiff's
deprivation was not random and unauthorized, but instead the result
of an "'established state procedure' that destroy[ed] his entitlement
without according him proper procedural safeguards." Id. at 436.  In
Zinermon, the Supreme Court held that the Parratt-Hudson doctrine is
not applicable if the state had accorded its employees broad power and
little guidance in effecting the alleged deprivation.  494 U.S. at
135.  Therefore, when a plaintiff brings an action against a
municipality claiming that established state procedures deprived the
plaintiff of a property interest, Parratt is not applicable.  The
rationale of Parratt does not apply when the challenged actions comply

with municipal policy.  See Gillihan v. Shillinger, 872 F.2d 935, 938-39 (10th Cir. 1989) (holding that the state was not shielded from § 1983 liability for acts in compliance with policy); McKee v. Heggy, 703 F.2d 479, 482-83 (10th Cir. 1983) (same).

Throughout his brief, when discussing the seizure at the lot, plaintiff repeatedly discusses the alleged required procedure for an abatement and then states that defendants failed to follow the procedure.  Plaintiff further argues that defendants' actions were never authorized by the City Council as required and that there is no City ordinance that allows the City employees to assist in repossessions.  It is clear that plaintiff is alleging the very kind of "random and unauthorized actions" contemplated by the Parratt-Hudson line of cases.  Plaintiff does not allege that his harms were caused by an established state procedure, but rather that he was harmed by the City's actors not following the established state procedure.  See Logan, 455 U.S. at 437.  Plaintiff has not alleged abuse of a broadly delegated, uncircumscribed power.  See Zinermon, 494 U.S. at 136.  No pre-deprivation process is available to counter such an unauthorized harm.  As a result, plaintiff's § 1983 due process claim is barred by the Parratt-Hudson doctrine, if there is an adequate post-deprivation remedy available.

It is clear that such a remedy exists for persons suffering the harm alleged by plaintiff.  Plaintiff can pursue his claim for conversion.  (Pretrial Order at 14).  In addition, courts in this district have already determined that there is an adequate post-deprivation remedy under Kansas law for the type of harm alleged by plaintiff.  See Wilkins v. Skiles, No. 02-3190-JAR, 2005 WL 3084902,

at *8 (D. Kan. Oct. 20, 2005) (finding that the plaintiff's Fourteenth
Amendment procedural due process claim was barred because the claim
was based on an alleged failure to follow state mandated procedures
and the plaintiff had an adequate remedy under Kansas law based on a
replevin action or an action for conversion); Haynes v. Attorney
General of Kan., No. 03-4209-RDR, 2005 WL 2704956, at *5 (D. Kan. Aug.
6, 2005) (finding that the plaintiff's Fourteenth Amendment due
process claim was barred because the claims were based on random,
unauthorized acts, and plaintiff had an adequate state law remedy
under the Kansas Tort Claims Act or a claim for conversion); McCormick
v. City of Lawrence, 253 F. Supp. 2d 1172, 1198-99 (D. Kan. 2003)
(same).

Therefore, plaintiff's claims under the Fourteenth Amendment for
damages caused by unauthorized conduct during the seizure fail because
the state provides adequate post-deprivation remedies.  Defendants'
motion for summary judgment on plaintiff's § 1983 claim for due
process is granted.

**E.   Fifth Amendment**

Finally, plaintiff has made a section 1983 claim for the alleged
violation of his Fifth Amendment rights.  Defendants argue that
plaintiff's Fifth Amendment claim is barred because he has an adequate
state remedy that he must first exhaust.  Plaintiff responds that he
has filed the required notice under Kansas law and is not required to
first exhaust his conversion claim before proceeding with his Fifth
Amendment claim.  In Kansas, a claim for conversion against a state
actor would be filed pursuant to the Kansas Tort Claims Act. Prior to
filing a claim against a state agency or employee the claimant must

file notice pursuant to K.S.A. 12-105b. The statute states in pertinent part:

> (d) Any person having a claim against a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice as provided in this subsection before commencing such action. The notice shall be filed with the clerk or governing body of the municipality and shall contain the following: (1) The name and address of the claimant and the name and address of the claimant's attorney, if any; (2) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of; (3) the name and address of any public officer or employee involved, if known; (4) a concise statement of the nature and the extent of the injury claimed to have been suffered; and (5) a statement of the amount of monetary damages that is being requested. In the filing of a notice of claim, substantial compliance with the provisions and requirements of this subsection shall constitute valid filing of a claim. The contents of such notice shall not be admissible in any subsequent action arising out of the claim. Once notice of the claim is filed, no action shall be commenced until after the claimant has received notice from the municipality that it has denied the claim or until after 120 days has passed following the filing of the notice of claim, whichever occurs first. A claim is deemed denied if the municipality fails to approve the claim in its entirety within 120 days unless the interested parties have reached a settlement before the expiration of that period. No person may initiate an action against a municipality unless the claim has been denied in whole or part. Any action brought pursuant to the Kansas tort claims act shall be commenced within the time period provided for in the code of civil procedure or it shall be forever barred, except that, a claimant shall have no less than 90 days from the date the claim is denied or deemed denied in which to commence an action.

K.S.A. 12-105b(d).

Plaintiff complied with the notice provision in this statute. Pursuant to the statute, plaintiff could then proceed with a tort claim against the state actors. Defendants assert that plaintiff could not proceed with plaintiff's Fifth Amendment claim until his conversion claim was resolved. Defendants cite J.B. Ranch, Inc. v. Grand County, 958 F.2d 306, 308 (10th Cir. 1992), to support their

-20-

argument.  <u>J.B. Ranch</u> does require an aggrieved property owner to show that "the state refused to compensate him for his loss" and that "a Fifth Amendment takings claim is not ripe until the property owner has attempted to obtain, and been denied, compensation using state procedures."  <u>Id.</u>

Plaintiff, however, has satisfied his burden in this case. Kansas law merely provides that notice be sent regarding the claim. Once a party is provided with a denial it may proceed against the state actor.  Unlike the statutory procedure set forth in <u>J.B. Ranch</u>, Kansas law does not have a set procedure in which to challenge a conversion by the state; it simply utilizes the state tort law. Moreover, the other cases cited by defendants are not factually similar to this case.  Since plaintiff has utilized the claim procedure set forth in the statute and has been denied payment, "plaintiff has attempted to obtain, and been denied, compensation using state procedures."  <u>Id.</u>  Therefore, plaintiff may proceed on his Fifth Amendment takings claim against the Bank and Thill.[8]

**III. Conclusion**[9]

Defendants Holmes' and Brown's motion for summary judgment is granted.  The City's motion for summary judgment is granted in part and denied in part.  (Doc. 129).  The Bank defendants' motion for

---

[8] The court will again examine the City's liability if and when the City files a motion on behalf of defendant Craig.

[9] The court will take the Bank defendants' motion for summary judgment against the City's cross claim under advisement. (Doc. 125). The motion will be ruled upon when and if the City files a motion for summary judgment on behalf of Craig.  If the City does not file a motion for summary judgment on Craig's behalf, the court will then rule on the motion.

summary judgment is granted on plaintiff's Fourteenth Amendment claim and denied on plaintiff's Fourth and Fifth Amendment claims. (Doc. 123). Defendant Craig shall file a motion for summary judgment, if he desires, by July 7.

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 3 double-spaced pages and shall strictly comply with the standards enunciated by this court in <u>Comeau</u> <u>v. Rupp</u>, 810 F. Supp. 1172, 1174 (1992). The response to any motion for reconsideration shall not exceed 3 double-spaced pages. No reply shall be filed.


IT IS SO ORDERED.

Dated this   25th   day of June 2008, at Wichita, Kansas.


s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE